IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ZAINE KOSDROSKY | ) | CASE NO. |
| 4503 Milford Avenue | ) | |
| Parma, Ohio 44134 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| BEST WIRELESS BRECKSVILLE, INC. | ) | |
| c/o Nick Garg | ) | **JURY DEMAND ENDORSED** |
| Statutory Agent | ) | **HEREIN** |
| 7590 Chippewa Road | ) | |
| Brecksville, Ohio 44030 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Zaine Kosdrosky, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

## PARTIES

1. Kosdrosky is a resident of the city of Parma, county of Cuyahoga, state of Ohio.

2. Defendant is a corporation with a place of business located at 7590 Chippewa Road Brecksville, Ohio 44030 ("Brecksville Location").

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Kosdrosky is alleging federal law claims regarding the deprivation of Kosdrosky's rights under the Americans with Disabilities Act of 1990.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5. All material events alleged in this Complaint occurred in Cuyahoga County.

6.    Within 300 days of the conduct alleged below, Kosdrosky filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"), Charge No. 532-2020-02367 against Defendant.

7.    On or about August 10, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Kosdrosky regarding the Charge of Discrimination.

8.    Kosdrosky received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

9.    Kosdrosky filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

10.    Kosdrosky has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## FACTS

12.    Defendant owns and operates a cellular phone retail store in Cuyahoga County.

13.    Defendant hired Kosdrosky as a Store Manager in or around January 2020.

14.    Kosdrosky has been diagnosed with Multiple Sclerosis and Asthma ("Medical Conditions").

15.    Kosdrosky's Medical Conditions affect his neurological and respiratory body systems.

16.    Kosdrosky's Medical Conditions are neurological and respiratory disabilities.

17.    Kosdrosky's Medical Conditions impacts one or more of his major life activities, including working.

18.    Kosdrosky has a record of his Medical Conditions.

19. Despite his Medical Conditions, Kosdrosky was able to perform the essential functions of his job.

20. As a result of suffering from his Medical Conditions, Kosdrosky is and was considered disabled within the meaning of the ADA.

21. Chris Syed is and was at all times hereinafter mentioned an owner of Defendant, who acted directly or indirectly in the interest of Defendant in relation to its employees.

22. At times relevant herein, Syed supervised and/or controlled Kosdrosky's employment with Defendant and was empowered to take tangible employment actions against Kosdrosky.

23. By January 21, 2020, the first case of COVID-19 was detected in the United States.

24. Kosdrosky's Medical Conditions render him highly susceptible to complications from COVID-19 infection.

25. On or around February 1, 2020, Kosdrosky disclosed his Medical Conditions to Syed in a face to face conversation ("Disclosure").

26. Syed had a duty to report Kosdrosky's Disclosure to Defendant.

27. Syed did report Kosdrosky's Disclosure to Defendant.

28. Defendant had knowledge of Kosdrosky's disability.

29. On or around February 18, 2021, Kosdrosky asked Syed to send cleaning supplies to Defendant's Brecksville Location in order to prepare for the pending COVID pandemic. ("Request For Supplies").

30. Defendant did not timely respond to Kosdrosky's Request for Supplies.

31. On March 9, 2020, Ohio Governor Mike DeWine declared a State of Emergency in Executive Order 2020-01D due to the COVID-19 pandemic. ("State of Emergency")

32. On or around March 22, 2020, the Ohio Department of Health issued an order requiring employers to institute social distancing policies, require heightened sanitization practices, and require employees to wear proper personal protective equipment ("PPE"). ("Government Mandate")

33. The Government Mandate was in accordance with emergency powers granted to the Ohio Department of Health in Executive Order 2020-01D.

34. R.C. § 3701.352 states, "No person shall violate any rule the director of health or department of health adopts or any order the director or department of health issues under this chapter to prevent a threat to the public caused by a pandemic, epidemic, or bioterrorism event."

35. R.C. § 4101.11 states that every Ohio employer is responsible to protect its employees and guests by furnishing an using safety devices and safeguards and that employers shall "do every other thing reasonable necessary to protect the life, health, safety, and welfare of such employees and frequenters."

36. R.C. § 4101.12 requires every Ohio employer to furnish a safe place of employment, follow orders, and use methods and processes to make or keep a safe workplace and that employers shall do "every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

37. As of March 9, 2020, Defendant had not responded to Kosdrosky's Request For Supplies.

38. On Match 21, 2020, Defendant finally sent Kosdrosky a box of sanitation supplies for the Brecksville Location. ("Supply Delivery")

39. The Supply Delivery did not include hand soap.

40. The Supply Delivery did not include gloves.

41. The Supply Delivery did not include face masks.

42.  The Supply Delivery did not include hand sanitizer.

43.  On or around March 21, 2020, Kosdrosky complained to Syed and Ryan Taft, another owner of Best Wireless, that the Supply Delivery did not include essential items for compliance with the Government Mandate. ("COVID Complaint")

44.  The COVID Complaint was a complaint that Defendant was not providing a safe work environment for employees and customers, as Defendants were not in compliance with the Government Mandate.

45.  During the COVID Complaint, Kosdrosky complained that, due to his Medical Conditions, he was highly susceptible to complications of COVID, and that Defendant's failure to comply with the Government Mandate threatened his health and safety.

46.  During the COVID Complaint, Kosdrosky requested that Defendant send additional supplies so that Defendant would be in compliance with the Government Mandate.

47.  During the COVID Complaint, Kosdrosky asked for additional supplies so that he could take extra safety precautions against COVID as an accommodation for his disabilities. ("Accommodation Request")

48.  Kosdrosky's Accommodation Request was reasonable.

49.  Kosdrosky's Accommodation Request did not cause an undue hardship on Defendant.

50.  Defendant did not determine if Kosdrosky's Accommodation Request would cause an undue hardship.

51.  Defendant has no contemporaneously created documents reflecting any effort to determine if Kosdrosky's Accommodation Request would cause an undue hardship.

52.  After the Accommodation Request, no one at Defendant engaged in an interactive process to find a reasonable accommodation for Kosdrosky's disability.

53. Defendants violated the ADA when no one at Defendant engaged in an interactive process to find a reasonable accommodation for Kosdrosky's disability.

54. On or around March 26, 2020, Syed told Kosdrosky that due to COVID, Defendant would be permanently closing the Brecksville Location, and terminating his employment. ("Termination Call")

55. Following the Termination Call, Kosdrosky inventoried the Brecksville location and prepared the location to close.

56. Following March 27, 2020, Kosdrosky was no longer employed by Defendant.

57. On or around April 13, 2020, Defendant reopened the Brecksville Location. ("Reopening")

58. Defendant did not ask Kosdrosky to return to work following the Reopening.

59. Following the Reopening, Defendant hired a non-disabled manager to replace Kosdrosky at the Brecksville Location.

60. Defendant's assertion that Kosdrosky was terminated due to permanent closure of the Brecksville Location no basis in fact.

61. Defendant's assertion of permanently closing the Brecksville Location did not actually motivate Defendant's decision to terminate Kosdrosky.

62. Defendant knowingly terminated Kosdrosky.

63. Defendant knowingly took an adverse employment action against Kosdrosky.

64. Defendant knowingly took an adverse action against Kosdrosky.

65. Defendant intentionally terminated Kosdrosky.

66. Defendant intentionally took an adverse employment action against Kosdrosky.

67. Defendant intentionally took an adverse action against Kosdrosky.

68. Defendant knew that terminating Kosdrosky would cause Kosdrosky harm, including economic harm.

69. Defendant willfully terminated Kosdrosky.

70. Defendant willfully took an adverse employment action against Kosdrosky.

71. Defendant willfully took an adverse action against Kosdrosky. There was a causal connection between Kosdrosky's disability and Defendant's termination of Kosdrosky.

72. There was a causal connection between Kosdrosky's COVID Complaint and Defendant's termination of Kosdrosky.

73. As a result of Defendant's conduct, Kosdrosky has suffered, and continues to suffer harm.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 12101 *et seq.*

74. Kosdrosky restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

75. Kosdrosky's Medical Conditions constitute physiological impairments.

76. Kosdrosky's Medical Conditions substantially impair one or more of his major life activities including working.

77. Kosdrosky is disabled.

78. Kosdrosky informed Defendant of his disabling conditions.

79. In the alternative, Defendant perceived Kosdrosky as being disabled.

80. Defendant perceived Kosdrosky's Medical Conditions to substantially impair one or more of his major life activities including working.

81. Defendant treated Kosdrosky less favorably than other similarly-situated employees based on his disabling conditions.

82. Defendant treated Kosdrosky less favorably than other similarly-situated employees based on his perceived disabling condition.

83. Kosdrosky requested accommodations from Defendants to assist with his disabilities including additional supplies to help prevent the spread of COVID.

84. Kosdrosky's requested accommodations were reasonable.

85. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendant.

86. Defendants failed to engage in the interactive process of determining whether Kosdrosky needed an accommodation.

87. Defendants failed to provide an accommodation.

88. Defendants terminated Kosdrosky following his Accommodation Request.

89. Defendants violated the ADA by failing to provide Kosdrosky a reasonable accommodation

90. On or about March 26, 2020, Defendant terminated Kosdrosky's employment without just cause.

91. Defendant terminated Kosdrosky's employment based on his disabilities.

92. Defendant terminated Kosdrosky's employment based on his perceived disabilities.

93. Defendant violated the ADA when it discharged Kosdrosky based on her disabilities.

94. Defendant violated the ADA when it discharged Kosdrosky based on his perceived disabilities.

95. Defendant violated the ADA by discriminating against Kosdrosky based on his perceived disabling condition.

96. As a result of Defendant' discrimination against Kosdrosky in violation of the ADA, Kosdrosky has been denied employment opportunities providing substantial compensation

and benefits, thereby entitling Kosdrosky to injunctive, equitable, and compensatory monetary relief.

97. As a result of Defendant' discrimination against Kosdrosky in violation of the ADA, Kosdrosky has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and Medical Conditions, loss of self-esteem and self-confidence, and emotional pain and suffering.

98. In its discriminatory actions as alleged above, Defendant acted with malice or reckless indifference to the rights of Kosdrosky, thereby entitling Kosdrosky to an award of punitive damages.

99. To remedy the violations of the rights of Kosdrosky secured by the ADA, Kosdrosky requests that the Court award him the relief demanded below.

## COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

100. Kosdrosky restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

101. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

102. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

103. A clear public policy exists and is manifested in R.C. § 4101.12 stating that "no employer shall require, permit, or suffer any employee to go or being in any employment or place of

employment which is not safe…" and "no employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters."

104. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee based on their complaints of dangerous, unsafe, or illegal activity.

105. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

106. A clear public policy exists and is manifested in the Government Mandate requiring social distancing and the use of protective equipment to prevent the spread of COVID-19.

107. A clear public policy exists and is manifested in R.C. §3701.352 against violating orders promulgated by the Ohio Department of Health.

108. Defendants' termination of Kosdrosky jeopardizes these public policies.

109. Defendants' termination of Kosdrosky was motivated by conduct related to these public policies.

110. Defendants had no overriding business justification for terminating Kosdrosky.

111. As a direct and proximate result of Defendants' conduct, Kosdrosky has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Zaine Kosdrosky requests judgment in his favor against Defendant, containing the following relief:

(a) A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the laws of the United States;

(b) An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

(c) An order directing Defendant to place Kosdrosky in the position he would have occupied but for Defendant' discriminatory, retaliatory and/or otherwise unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Kosdrosky;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Kosdrosky for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(e) Awarding against each Defendant compensatory and monetary damages to compensate Kosdrosky for lost wages, emotional distress, and other consequential damages, in an amount to be proven at trial;

(f) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Kosdrosky for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and Medical Conditions, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(g) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Kosdrosky for harm to his professional and personal reputation and loss of career fulfillment;

(h) An award of damages for any and all other monetary and/or non-monetary losses suffered by Kosdrosky in an amount to be determined at trial, plus prejudgment interest;

(i) An award of punitive damages;

(j) An award of costs that Kosdrosky has incurred in this action, as well as Kosdrosky's reasonable attorneys' fees to the fullest extent permitted by law; and

(k) Awarding such other and further relief that this Court deems necessary and proper.

11

Respectfully submitted,

Daniel S. Dubow (0095530)
Samuel B. Robb (0099035)
**The Spitz Law Firm, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email: chris.wido@spitzlawfirm.com
          sam.robb@spitzlawfirm.com

*Attorneys For Plaintiff Zaine Kosdrosky*

<u>JURY DEMAND</u>

Plaintiff Zaine Kosdrosky demands a trial by jury by the maximum number of jurors permitted.

Samuel B. Robb (0099035)